UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
|     Plaintiff, | : |
| | : |
| v. | :   No. 5:25-cv-1498 |
| | : |
| KATHRYN S. FLAIM, | : |
|     Defendant. | : |

_____

**O P I N I O N**

**United States' Motion for Summary Judgment, ECF No. 24 – Granted**

**Joseph F. Leeson, Jr.**                                                                                      **October 31, 2025**
**United States District Judge**

## I. INTRODUCTION

The United States of America brings this action pursuant to 26 U.S.C. § 6672, seeking a money judgment against Defendant Kathryn S. Flaim for federal income tax liability. The Government alleges that Flaim willfully failed to collect, account for, and pay over federal employment taxes of Slate Belt Visiting Nurses, LLC, and Slate Belt Home Care, LLC, two businesses in which Flaim held managerial roles. Currently before the Court is the Government's Motion for Summary Judgment. For the reasons stated below, the Motion for Summary Judgment is granted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Undisputed Material Facts[1]

The Internal Revenue Service (IRS) assessed Flaim with trust fund recovery penalties for failing to withhold, and pay over, years' worth of employment taxes for two businesses in which

---

[1] Where a party fails to oppose a summary judgment motion, the facts may be deemed undisputed. *See* Fed. R. Civ. P. 56(e)(3); *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Any factual references made in this section are to the Government's Statement of Undisputed Material Facts ("Pl. SOF"), ECF No. 24-2.

she had management roles: Slate Belt Visiting Nurses, LLC, and Slate Belt Home Care, LLC. *See* United States' Statement of Undisputed Material Facts ("Pl. SOF"), ECF No. 24-2, ¶ 70. The IRS conducted at least three assessments since 2015, in which it was determined that Flaim has a total outstanding balance of $204,466.54, as of September 29, 2025. *See id.* at ¶¶ 71-72.

### i. Slate Belt Visiting Nurses, LLC

Flaim began working for Slate Belt Visiting Nurses, LLC ("Visiting Nurses"), a home health aide company mostly owned by her mother, in the early 1990s. *See id.* at ¶¶ 1-3. Flaim's responsibilities at Visiting Nurses included "all aspects of the business," *id.* at ¶ 4, including determining financial policy, *id.* at ¶ 5, authorizing and directing bill payments, *id.* at ¶ 6, signing tax returns, *id.* at ¶ 7, authorizing payroll, *id.* at ¶ 8, and authorizing and making federal tax deposits, *id.* at ¶ 10. Flaim also had authority to hire and fire employees, though she left this task to others. *Id.* at ¶ 13. Flaim was one of only two people who could authorize payroll payments for Visiting Nurses. *Id.* at ¶ 9. Flaim was also the person assigned the PIN numbers and passwords to access the electronic payment system for federal taxes, and to access the business's bank account. *See id.* at ¶¶ 11-12.

In 2014, Visiting Nurses fell behind on its employment taxes and had outstanding tax liabilities for quarters one through three. *See id.* at ¶ 14. Flaim became aware of this tax liability in spring or summer of 2014, and had several contacts, phone calls, and visits with IRS personnel. *See id.* at ¶¶ 15-17. Flaim cut staff, salaries, and expenses, but Visiting Nurses' delinquent taxes increased. *See id.* at ¶¶ 18-20. During this time, Flaim authorized the payment of other creditors besides the IRS, including bills for supplies, utilities, maintenance, insurance, rent, and payroll. *See id.* at ¶¶ 20-22. Visiting Nurses closed in the mid-2010s. *See id.* at ¶ 23.

### ii. Slate Belt Home Care, LLC

In 1997, Flaim opened Slate Belt Home Care, LLC ("Home Care") as a sole proprietorship, but later incorporated it into a limited liability company. *Id.* at ¶¶ 24-25. Home Care is a member-managed LLC, of which Flaim is the sole member.[2] *Id.* at ¶¶ 26-27. Home Care was designed to complement the work of Visiting Nurses, by providing homemaking and personal care services for clients. *Id.* at ¶ 28. Flaim "has final authority over all managerial decisions at Home Care," *id.* at ¶ 31, including "oversee[ing] financial affairs," *id.* at ¶ 49, setting employee salaries, signing rental leases, purchasing equipment, and making IRS payments, *id.* at ¶ 50. Flaim opened Home Care's bank accounts at Fidelity Bank and is the only one with signature authority over the accounts. *Id.* at ¶¶ 33-38, 40. Only Flaim can authorize or make payments of bills or creditors, payroll, and federal tax deposits. *Id.* at ¶¶ 41, 43.

Home Care receives biweekly payroll reports from a third party employed to assist with processing payroll. *Id.* at ¶¶ 52-53. The biweekly reports notate "the amount of tax withholdings due to the IRS." *Id.* at ¶ 54. Home Care "never had a separate bank account for trust fund taxes, and withheld employment taxes were always comingled with other funds." *Id.* at ¶ 39. Home Care's tax returns are signed either by Flaim, or by Home Care's General Manager, using a rubber stamp of Flaim's signature after Flaim's review and approval. *Id.* at ¶ 44. Only two tax returns submitted by Home Care do not contain Flaim's signature or the rubber stamp: Forms 941 for the second quarter of 2015 and the first quarter of 2016, which Flaim believes were signed and submitted by her mother, using Flaim's name. *Id.* at ¶ 45. Forms 941 "list the total employment withholding liability due to the IRS for the quarter." *Id.* at ¶ 56.

---

[2] The Government also alleges that "[a]t the beginning of Home Care, bylaws were drawn up which listed Flaim as the only member of the business. These bylaws did not discuss her role, responsibility, or powers as member." Pl. SOF at ¶ 32 (internal citations omitted).

The IRS informed Flaim on several occasions that Home Care had outstanding tax liabilities. *Id.* at ¶ 57. One of these contacts occurred in March of 2018 and another occurred in May of 2023. *Id.* at ¶¶ 58-59. In a letter dated May 16, 2023, the IRS informed Flaim of all assessed tax liabilities to date. *Id.* at ¶ 59. Yet in 2023, Flaim continued to make payments to creditors other than the IRS, including for utilities, rent, payroll, and her personal compensation. *Id.* at ¶¶ 60-63. It is alleged that Flaim's personal expenses were charged to Home Care's business accounts as a form of "owner compensation," including payments to Flaim's credit card company, Netflix, her husband's mortgage, and his personal account, as well as ATM cash withdrawals from the company account. *See id.* at ¶¶ 68-69.

**B.    Procedural History**

On March 20, 2025, Plaintiff, the United States of America (the "Government"), at the request of the Chief Counsel of the IRS, and at the direction of the Attorney General of the United States, brought suit against Defendant Kathryn S. Flaim for unpaid trust fund recovery penalty assessments made against her pursuant to 26 U.S.C. § 6672, along with statutory interest. *See* Compl., ECF No. 1. On March 21, 2025, the Government filed an Amended Complaint, asking the Court to render a judgment against Flaim for her federal income tax liabilities, pursuant to 26 U.S.C. § 6672, in the amount of $207,215.99 (as of March 17, 2025). *See* Am. Compl., ECF No. 4. On May 12, 2025, Flaim filed an Answer after being granted an extension of time by the Court. *See* Answer, ECF No. 14. On May 27, 2025, the Court issued a Scheduling Order requiring that all dispositive motions be filed no later than October 1, 2025, and scheduling a non-jury trial for November 10, 2025. *See* ECF No. 15.

On August 26, 2025, the matter was referred to Magistrate Judge Pamela A. Carlos for a settlement conference. *See* ECF No. 17. On September 23, 2025, the Government filed a Motion for Summary Judgment, seeking a money judgment against Flaim in the updated amount of

$204,466.54 (as of September 29, 2025).³ *See* Motion, ECF No. 24. The Court reminded Flaim of her two week deadline to respond to the Motion, and ordered the parties to notify the Court if settlement was reached. *See* ECF No. 26. Flaim did not file a timely response to the Motion for Summary Judgment. On October 14, 2025, the Government filed a Notice of Defendant's Failure to Respond and Request for Entry of Judgment. *See* ECF No. 27. On October 21, 2025, Flaim submitted an "Objection" to the Government's Notice in which she asserted additional affirmative defenses not included in her Answer, indicated that "Th[e] Motion is Not Unopposed," and that she was "attempting to negotiate a reasonable settlement with the United States." *See* Objection, ECF No. 28. On October 28, 2025, the Government filed a Response to Flaim's Objections, in which it again requested that the Court grant its Motion for Summary Judgment. *See* ECF No. 32. The Court is now ready to render a decision on the Motion.

### III.    LEGAL STANDARDS

#### A.    Motion for Summary Judgment – Review of Applicable Law

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once

---

³ This calculation was provided by Revenue Officer Yakimova-Martinez of the IRS, on September 22, 2025. *See* Yakimova-Martinez Decl., ECF No. 24-16 (and the account transcripts appended thereto).

such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

        **i.    When Summary Judgment is Unopposed – Review of Applicable Law**

Where a party fails to oppose a summary judgment motion, the facts may be deemed undisputed. *See* Fed. R. Civ. P. 56(e)(3); *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). However, the court must still analyze the motion to determine if summary judgment is appropriate, "that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *See Anchorage Assocs.*, 922 F.2d at 175. "Where the moving party does not have the burden of proof on the relevant issues, [as here] . . . the district court must determine that the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." *Id.* (citing *Celotex*, 477 U.S. at 322-23).

    **B.    26 U.S.C. § 6672 Claims – Review of Applicable Law**

The United States Internal Revenue Code states that the Internal Revenue Service (IRS), as delegate of the Secretary of Treasury, "is authorized and required to make the inquiries,

determinations, and assessments of all taxes . . . which have not been duly paid . . . ." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 243 (2002) (citing 26 U.S.C. § 6201(a)) (italicization omitted) (cleaned up). "An 'assessment' amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes." *Id.* at 242. Such "an assessment is entitled to a legal presumption of correctness." *Id.; see Samango v. United States*, 833 F. App'x 941, 945 (3d Cir. 2020) (unpublished). Once this is shown, the burden then shifts to the taxpayer to "rebut the presumption by a preponderance of the evidence." *Samango*, 833 F. App'x at 945 (internal citations omitted).

The Internal Revenue Code "requires employers to withhold both federal Social Security and individual income taxes from its employees' wages" and to "hold the funds in trust for the Government" until the time comes to pay them quarterly. *United States v. Reddington*, No. 19-3133, 2021 WL 5085305, at *2 (E.D. Pa. Nov. 2, 2021) (explaining why such withholding taxes are often called "trust fund taxes"). Section 6672 of the Internal Revenue Code "imposes a penalty on certain persons for failure to turn over withholding taxes to the IRS." *Greenberg v. United States*, 46 F.3d 239, 242 (3d Cir. 1994) (citing 26 U.S.C. § 6672(a)). To be found liable for a tax penalty under section 6672, two conditions must be met: (1) "the individual must be a 'responsible person,'" and (2) the "failure to pay the tax must be 'willful.'" *Samango*, 833 F. App'x at 945 (citing *Greenberg*, 46 F.3d at 242).

### i. "Responsible person"

To be a "responsible person," the individual taxpayer must be someone who is "required to collect, truthfully account for or pay over any tax due to the United States." *Id.* (citing *Greenberg*, 46 F.3d at 242-43). "Responsibility is a matter of status, duty or authority, not knowledge." *Id.* (citing *Quattrone Accountants, Inc. v. Internal Revenue Service*, 895 F.2d 921, 927 (3d Cir. 1990)). To be held "responsible," a person need not have "exclusive control" over

the corporation's finances, but must have "significant control" thereof. *Samango*, 833 F. App'x at 945 (citing *Brounstein v. United States*, 979 F.2d 952, 954 (3d Cir. 1992)). A person has "significant control" if she has either "the final or significant word over which bills or creditors get paid." *Id.* (citing *Quattrone*, 895 F.2d at 927). The Third Circuit and its district courts also consider several non-exclusive factors to determine whether an individual is a "responsible person" for section 6672 purposes, including:

> [the] (1) contents of the corporate bylaws, (2) ability to sign checks on the company's bank account, (3) signature on the employer's federal quarterly and other tax returns, (4) payment of other creditors in lieu of the United States, (5) identity of officers, directors, and principal stockholders in the firm, (6) identity of individuals in charge of hiring and discharging employees, and (7) identity of individuals in charge of the firm's financial affairs.

*Id.* at 945-46 (citing *Greenberg*, 46 F.3d at 243 (quoting *Brounstein*, 979 F.2d at 954–55)).

### ii. "Willfulness"

"Willfulness" under section 6672 is defined by either a "voluntary, conscious and intentional decision" to pay other creditors rather than pay taxes, *id.* at 947 (quoting *Quattrone*, 895 F.2d at 928), or a "reckless disregard" that the taxes will go unpaid, *id.* (quoting *Brounstein*, 979 F.2d at 956). *See Greenberg*, 46 F.3d at 244 ("A responsible person acts willfully when he pays other creditors in preference to the IRS knowing that taxes are due, or with reckless disregard for whether taxes have been paid.") (internal citations omitted). "Reckless disregard" includes an individual's "failure to investigate or correct mismanagement after being notified that withholding taxes have not been paid." *Samango*, 833 F. App'x at 947 (citing *Greenberg*, 46 F.3d at 244). "Any payments to other creditors or bills, including wages, made with knowledge that federal taxes are due establishes willfulness." *Id.* "It is no defense that the corporation was in financial distress and that funds were spent to keep the corporation in business with an

expectation that sufficient revenue would later become available to pay the United States." *Greenberg*, 46 F.3d at 244.

### iii. Timing of proceedings

Generally, "the amount of any tax imposed" under the Internal Revenue Code "shall be assessed within 3 years after the return was filed," and a court proceeding for the collection of such tax must also occur within that time. *See* 26 U.S.C. § 6501(a). However, in a case involving a "willful attempt in any manner to defeat or evade tax[,] the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." *Id.* at (c)(2). Where the assessment of a tax "has been made within the period of limitation properly applicable thereto," such tax may be collected by a court proceeding that commences "within 10 years after the assessment of the tax." 26 U.S.C. § 6502(a).[4]

## IV. ANALYSIS

The Government initiated this action on March 20, 2025, and timely seeks to collect withholding taxes, the amount of which was first assessed less than ten years prior, on April 6, 2025. *See* 26 U.S.C. § 6502(a); Memorandum in Support of Motion for Summary Judgment (Pl. Br.), ECF No. 24-1 at 7. The Court is now asked to determine if there exists a genuine dispute of fact regarding whether Flaim is a "responsible person" who "willfully" failed to account for and pay over withholding ("trust fund") taxes to the Government, as those terms are defined under 26 U.S.C. § 6672. For the reasons that follow, the Court finds that no dispute of material fact exists to defeat summary judgment.

---

[4] "If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable." 26 U.S.C. § 6502(a).

### A. Flaim is a "responsible person" under 26 U.S.C. § 6672.

The Court agrees with the Government's assertion that Flaim is a "responsible person" within the meaning of section 6672. In her deposition, Flaim states that she was the "assistant administrator" at Visiting Nurses. *See* Flaim Dep., ECF No. 24-3, 31:21-23. In her signed Report, dated October 6, 2014, following an interview with IRS personnel, she states that her job title at Visiting Nurses was "business manager" and that her responsibilities at Visiting Nurses included "all aspects of the business," like determining financial policy, directing or authorizing payments of bills to creditors, authorizing payroll, and making federal tax deposits. *See* Form 4180 for Visiting Nurses ("VN 4180"), ECF No. 24-4; Pl. SOF at ¶¶ 4-10. In her deposition, Flaim also states that she is the sole member of Home Care (a member-managed LLC), *see* Flaim Dep. 47:7-10, who "authorize[s] pretty much everything that the general manager does," *see id.* at 30:18-31:4, sets company policy, *id.* at 57:15-18, and manages Home Care's financial obligations with other companies and creditors, *id.* at 58:4-9. Flaim admits the same in her signed Report, dated August 9, 2018, following another interview with IRS personnel about Home Care, in which she clarifies that she is the only individual authorized to determine its financial policy, authorize payroll tax returns, and direct the payment of bills and creditors. *See* Form 4180 for Home Care ("HC 4180"), ECF No. 24-7. As someone who self-admittedly had significant word over which bills or creditors got paid by Visiting Nurses, and the final word over which bills or creditors got paid by Home Care, Flaim undoubtedly had "significant control" over the finances of both businesses. *Samango*, 833 F. App'x at 945 (citing *Brounstein*, 979 F.2d at 954).

What is more, Flaim acknowledges that she is the person at each entity tasked with authorizing or making federal tax deposits. *See* VN 4180; HC 4180. Whether Flaim's mother was involved with the management of Visiting Nurses, or whether Flaim's General Manager was

involved with the management of Home Care, matters not. There can be more than one "responsible person" for section 6672 purposes. *See Reddington*, 2021 WL 5085305, at *3 (citing *Quattrone*, 895 F.2d at 926–27).

     As for the seven "non-exclusive factors" considered by Third Circuit courts when making a "responsible person" determination, the Court will address each in turn. *See Samango*, 833 F. App'x at 945 (citing *Greenberg*, 46 F.3d at 243). First, The Court is only aware of the existence of bylaws constructed at the inception of Home Care, which did not discuss Flaim's role, responsibilities, or powers as its sole member. Pl. SOF at ¶ 32. Second, Flaim was the only person assigned the PIN numbers and passwords for Visiting Nurses' bank account, *see id.* at ¶ 12, and is the only person with signature authority over Home Care's bank account, *id.* at ¶¶ 36-38, 40. Third, Flaim had the authority to sign tax returns for Visiting Nurses, *id.* at ¶ 7, and is responsible for signing tax returns for Home Care, *id.* at ¶ 44, having signed all but two of Home Care's quarterly tax returns herself, including by authorizing the General Manager to use a rubber stamp of her signature, *id.* at ¶¶ 44-45. Fourth, Flaim admits to making payments to creditors, including utilities, rent, and employee payroll, in lieu of both businesses' tax obligations to the United States. *Id.* at ¶¶ 20-22 (discussing payments made on behalf of Visiting Nurses); and ¶¶ 60-63 (discussing payments made on behalf of Home Care). Fifth, At Visiting Nurses, Flaim helped her mother run the business and took on management roles, *see id.* at ¶¶ 1-4, but at Home Care, "[t]here are no other officers, directors, stockholders, or members besides Flaim," *id.* at ¶ 48. Sixth, Flaim had the authority to hire and fire employees at both businesses, *id.* at ¶¶ 13, 46-47, and Seventh, Flaim had the authority to determine the financial policy and oversee financial affairs for both businesses, *id.* at ¶¶ 5, 49. The abundance of factual support for these allegations, coupled with Flaim's admission thereof, *see* Flaim Dep.; VN 4180; HC 4180, demonstrate that there is no genuine dispute of material fact on the issue of "responsible person."

Thus, the Court finds that Flaim was a responsible person "required to collect, truthfully account for or pay over any tax due to the United States." *Samango* 833 F. App'x at 945 (citing *Greenberg*, 46 F.3d at 242-43).

### B. Flaim's failure to pay the tax was "willful" under 26 U.S.C. § 6672.

The Court finds that Flaim either made a "voluntary, conscious and intentional decision" to pay other creditors rather than pay the withholding taxes owed, *id.* (quoting *Quattrone*, 895 F.2d at 928), or showed "reckless disregard" for whether the taxes would go unpaid, *id.* Flaim admitted in her signed 4180 Forms, following contacts with the IRS, that she knew that the withholding taxes for both Visiting Nurses and Home Care were unpaid, but that she nonetheless authorized payments for payroll, supplies, utilities, maintenance, insurance, and rent, among other bills. *See* VN 4180; HC 4180. Flaim confirmed that she was a person authorized to make federal tax deposits and to pay creditors for Visiting Nurses, *see* VN 4180, and that she was the only person authorized to do so for Home Care, *see* HC 4180.

Flaim indisputably made payments "to other creditors or bills, including wages[,] with knowledge that federal taxes [were] due." *Samango*, 833 F. App'x at 947 (citing *Greenberg*, 46 F.3d at 244). At Visiting Nurses, Flaim authorized the payment of other creditors besides the IRS, including bills for supplies, utilities, maintenance, insurance, rent, and payroll. *See* Pl. SOF at ¶¶ 20-22. These payments occurred after Flaim became aware of Visiting Nurses' tax delinquency in 2014. *See id.* at ¶¶ 15-17, 20-22. At Home Care, Flaim was made aware of the LLC's tax delinquency in 2018 and again in 2023, *id.* at ¶¶ 58-59, but continued to make payments to creditors other than the IRS, including for utilities, rent, payroll, and her personal compensation, *id.* at ¶¶ 60-63. Many of Flaim's personal expenses were also charged to Home Care's business accounts, including mortgage and credit card payments, and even a Netflix

subscription. *See id.* at ¶¶ 68-69. She never maintained a separate business account for Home Care's withholding taxes. *Id.* at ¶ 39.

All the same, Flaim appears to assert, at least for Visiting Nurses, that once she knew taxes were overdue, she first sought to return the business to a state of "profitability[,] in order to meet all expenses"; that cutting "payroll when possible, expenses, [and] other items" might help the business be able to pay taxes at some point. *See* VN 4180; Pl. SOF ¶¶ 15-20. Unfortunately, it is not a defense to say that the "corporation was in financial distress and that funds were spent to keep the corporation in business." *Greenberg*, 46 F.3d at 244. Flaim's attempt to cut expenses and pay a reduced payroll, without first paying the IRS, is not a correction of her prior mismanagement, and constitutes at least "reckless disregard" for whether withholding taxes have been paid. *See Samango*, 833 F. App'x at 947 (citing *Greenberg*, 46 F.3d at 244). Flaim fails to point to a genuine dispute of material fact on this point, and seeing no other factual disputes in the record, the Court finds that none exist on the issue of "willfulness." Thus, Flaim's conscious decision to make other payments in lieu of her businesses' tax obligations establishes her "willfulness" under section 6672.

    **C.**    **Flaim failed to rebut the presumption that the IRS's tax assessments were correct.**

Here, the Government has presented evidence of its federal tax assessment demonstrating Flaim's tax delinquency, in the form of a proposed assessment dated March 9, 2015, *see* ECF No. 24-5, a calculation provided by Revenue Officer Yakimova-Martinez of the IRS, on September 22, 2025, and the account transcripts appended thereto, *see* ECF No. 24-16. This assessment, totaling $204,466.54 (as of September 29, 2025), is entitled to a "legal presumption of correctness." *Fior D'Italia, Inc.*, 536 U.S. at 243; *Samango*, 833 F. App'x at 945. At this point, Flaim bears the burden of rebutting that presumption, *see Samango*, 833 F. App'x at 945,

but has failed to do so. Flaim's Answer to the Amended Complaint broadly denies all factual allegations,[5] states several "affirmative defenses," and says that "Plaintiff does not correctly state the amount owed," without explaining why she believes the penalty calculation to be incorrect. *See* Answer. Flaim then failed to respond to the Motion for Summary Judgment, even after being reminded of the response deadline by court order. *See* ECF No. 26. Instead, when the response deadline passed, and the Government filed a Notice of Defendant's Failure to Respond and Request for Entry of Judgment, ECF No. 27, Flaim responded to the *Notice* with Objections. ECF No. 28. In her filing, titled "OBJECTION TO ECF Document 27," Flaim asserts several new affirmative defenses which are unsupported by facts or legal argument, and claims that the "Motion is Not Unopposed" (seemingly referring to the Motion for Summary Judgment) but fails to articulate any arguments in opposition thereto. *See id.* Flaim also asserts that "[t]he plaintiff has *not* correctly stated the amount owed," but fails to point to an error in the Government's calculation or to demonstrate why the IRS's figure is incorrect. This, without more, fails to rebut the presumption that the assessment is correct. The Court finds that Flaim has failed to meet her burden to show a genuine issue of material fact in response to the Government's section 6672 argument. Accordingly, the deficiencies in Flaim's evidence (or lack thereof) entitle the Government to judgment as a matter of law. *See Anchorage Assocs.*, 922 F.2d at 175.

## V.    CONCLUSION

The Court finds that Defendant Flaim is a "responsible person" who "willfully" failed to pay employment withholding taxes, as those terms are understood under 26 U.S.C. § 6672. Flaim has failed to show a genuine dispute of fact on these issues, and has failed to rebut the

---

[5]    The Court notes that Flaim's Answer follows the filing of the Amended Complaint, but Flaim describes it as a "Response to [the] Allegations" in "Plaintiff's Complaint." *See* Answer, ECF No. 14. The Court nevertheless reads this to be an Answer to the operative pleading in the docket, the Amended Complaint.

presumption that the IRS's tax assessment is correct. At this stage, no reasonable factfinder would return a verdict for Flaim. Thus, the Court will grant summary judgment for the Plaintiff, the United States of America, on all counts, and enter a money judgment for the amount of the tax penalty, plus statutory interest. The Motion for Summary Judgment is granted.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge